UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, a/s/o Polaris, Inc.,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., a Washington corporation, et al.,<br><br>　　　　　　Defendants. | CASE NO. 2:23-cv-00621-TL<br><br>ORDER ON MOTIONS TO DISMISS |

　　　　This is an action for damages resulting from the derailment of a train carrying cargo from Seattle, Washington, to Wilmington, Ohio. This matter is before the Court on motions to dismiss by Defendant BNSF Railway Company (Dkt. No. 24) and Defendant Max Trans Logistics LLC (Dkt. No. 25). Having reviewed Plaintiff Starr Indemnity and Liability Company's responses (Dkt. Nos. 27, 33), Defendant BNSF's reply (Dkt. No. 30), and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS the motions with leave to amend certain claims.

# I. BACKGROUND

The allegations are stated as pleaded in the Amended Complaint. Dkt. No. 6.

## A. The Parties

Plaintiff Starr Indemnity and Liability Company ("Starr Indemnity") is a Texas corporation, with its principal place of business in New York City. Dkt. No. 6 ¶ 1.1. Plaintiff is subrogree of Polaris, Inc., a Minnesota corporation with its principal place of business in Medina, Minnesota. *Id.* ¶¶ 1.2, 3.13–3.14.

Defendant Expeditors International of Washington, Inc. ("Expeditors"), is a Washington corporation, with its principal place of business in Seattle, Washington. *Id.* ¶ 1.4.

Defendants Max Trans Logistics LLC and Max Trans Logistics of Chattanooga, LLC (collectively, "Max Trans") are Tennessee companies with their principal place of business in Chattanooga, Tennessee. *Id.* ¶ 1.5.

Defendant Delta Trucking, Inc., is a Florida corporation with its principal place of business in Miami, Florida. *Id.* ¶ 1.6. Defendant Delta Logistics, Inc., is an Oregon company, with its principal place of business in Wilsonville, Oregon. *Id.* Delta Logistics also does business as foreign profit corporation Delta Logistics WA, Inc. out of Kent, Washington. *Id.* Collectively, these Defendants will be referred to as "Delta."

Defendant Burlington Northern Santa Fe ("BNSF") Railway Company is a Delaware corporation with its principal place of business in Fort Worth, Texas. *Id.* ¶ 1.7.

## B. Factual Background

Polaris purchased outerwear (jackets and pants), shoes, and helmets (the "Subject Goods") to be transported by sea from Vietnam, South Korea, and China, for ultimate delivery to customers in Ohio. *Id.* ¶ 3.1. Teton Outfitters LLC was the importer and consignee of the Subject Goods. *Id.* ¶ 3.2.

Defendant Expeditors was the non-vessel owning common carrier ("NVOCC") which issued two sea waybills (Nos. 65T0010179, 65T001173) dated January 3, 2022, for transportation of the Subject Goods in four 40' containers to be delivered to Seattle and Tacoma, Washington. *Id.* ¶ 3.3. On various dates in March and early April of 2022, the Subject Goods arrived in Seattle. *Id.* ¶ 3.4.

Defendant Expeditors was also the freight forwarder responsible for then transporting and delivering the Subject Goods from Washington to Ohio. *Id.* Defendant Expeditors caused the four containers of Subject Goods to be placed in a container yard in Sumner, Washington, and consolidated into two cargo trailers. *Id.* ¶¶ 3.5–3.6. Defendant Expeditors also issued two bookings (Nos. H030201566, H030201567) to transport the two trailers overland from Washington to Ohio. *Id.* ¶ 3.6.

Defendant Expeditors agreed to transport the Subject Goods by motor truck and hired Defendant Max Trans, a motor truck carrier, to pick up the Subject Goods and carry them from Washington to Ohio. *Id.* ¶¶ 3.3, 3.7. Defendant Max Trans picked up the Subject Goods in Seattle and took them to a container yard. *Id.*

Defendant Max Trans subcontracted some or all of the interstate motor truck carriage to Delta. *Id.* In the container yard, and based upon their position in the yard, Defendant Max Trans and/or Defendant Delta "erroneously believed" that the Subject Goods were scheduled for travel by rail to Ohio. *Id.* One or both Defendants took the Subject Goods to Defendant BNSF's rail yard, where they were loaded in a trailer on flat car ("TOFC") configuration. *Id.* ¶ 3.8. However, the shipper had specifically requested, and Defendant Expeditors had agreed, that the Subject Goods were to be transported overland by truck. *Id.* ¶ 3.9.

On May 1, 2022, Defendant BNSF's eastbound train, on which the two trailers were loaded, derailed and caught fire between Minot and Des Lacs, North Dakota. *Id.* ¶ 3.10. All of

the Subject Goods were either destroyed by the derailment or caught fire and were destroyed by the subsequent fire and/or remediation efforts after the derailment. *Id.* ¶ 3.11. The total value of the goods lost and/or destroyed as a result was $1,262,898. *Id.* ¶ 3.12.

Polaris submitted its claim to Plaintiff, its underwriters, for the total amount of its loss. *Id.* ¶ 3.13. Plaintiff paid its insured for the total amount and became subrogated to the rights of Polaris. *Id.* ¶ 3.14.

**C.  Procedural History**

On April 27, 2023, Plaintiff commenced the instant action. Dkt. No. 1. On June 7, 2023, Plaintiff filed its Amended Complaint. Dkt. No. 6. Relevant to the instant motions, Plaintiff asserts against Defendant BNSF claims of negligence and breach of contract, as well as violations of federal statutes and regulations. *Id.* ¶¶ 7.1–7.11. Plaintiff asserts against Defendant Max Trans a claim of negligence and a violation of a federal statute. *Id.* ¶¶ 5.1–5.6.

Defendants BNSF and Max Trans now bring the instant motions to dismiss the claims against them. Dkt. Nos. 24, 25. Plaintiff opposes both motions. Dkt. Nos. 27, 33. To date, no other Defendants have filed a motion to dismiss.

## II.  LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a FRCP 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

### III. DISCUSSION

Defendants BNSF and Max Trans make substantially similar arguments.[1] Both argue that federal law, including the Carmack Amendment to the Interstate Commerce Act and the Carriage of Goods by Sea Act ("COGSA"), preempt Plaintiff's common law claims. Dkt. No. 24 at 10–11; Dkt. No. 25 at 3–5. Defendant BNSF also argues that Plaintiff's claim for "Violation of Federal Railroad Safety Regulations" is preempted. Dkt. No. 24 at 11–13. Finally, both Defendants argue that Plaintiff has not stated a claim for relief, regardless of preemption. *Id.* at 13–18; Dkt. No. 25 at 5–8. The Court considers each argument in turn.

As an initial matter, Plaintiff "offers no argument or authority whatsoever" in defense of its regulatory claim against Defendant BNSF, "nor does it even respond to BNSF's related arguments." Dkt. No. 30 at 2; *see also* Dkt. No. 27 at 5–6, 8–10. Therefore, as to Plaintiff's regulatory claim, Defendant BNSF's motion to dismiss is GRANTED and the claim is DISMISSED.

**A.      Preemption by Carmack Amendment**

**1.      Background**

"For over one hundred years, the Supreme Court has consistently held that the Carmack Amendment has completely occupied the field of interstate shipping." *Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 335 (3d Cir.

---

[1] Indeed, Defendant Max Trans incorporates large swaths of Defendant BNSF's briefing. *See* Dkt. No. 25 at 3, 8.

2014) ("*Lloyds*"); *see Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913) ("Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it."); *N.Y., New Haven & Hartford Ry. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953) ("Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss."). "The Courts of Appeals have also unanimously held that the Carmack Amendment 'preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments.'" *Lloyds*, 762 F.3d at 336 (quoting *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996)); *see also Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687–88 (9th Cir. 2007).

As the Ninth Circuit has explained, "[t]he Carmack Amendment is a federal statute that provides the exclusive cause of action for interstate shipping contract claims, and it completely preempts state law claims alleging delay, loss, failure to deliver and damage to property." *White v. Mayflower Transit*, 543 F.3d 581, 584 (9th Cir. 2008); *accord Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1120 (9th Cir. 2011); *Hall*, 476 F.3d at 688. The Carmack Amendment also "constitutes a complete defense to common law claims against interstate carriers for negligence, fraud and conversion, even though these claims may not be completely preempted."[2] *White*, 543 F.3d at 584 (citing *Hall*, 476 F.3d at 689).

2. **Statutory Text**

As to rail carriers, the Carmack Amendment states in relevant part:

> A rail carrier providing transportation or service subject to the jurisdiction of the [Surface Transportation] Board ["STB"] under

---

[2] A claim is completely preempted "to the extent that it arises from the same conduct as the claims for delay, loss or damage to shipped property." *White*, 543 F.3d at 586 (holding claim for intentional infliction of emotional distress was completely preempted). Complete preemption is an exception to the "well-pleaded complaint rule" for analyzing subject matter jurisdiction. *See Hall*, 476 F.3d at 686–87.

ORDER ON MOTIONS TO DISMISS - 6

> this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Board under this part are liable to the person entitled to recover under the receipt or bill of lading.
>
> The liability imposed under this subsection is for the actual loss or injury to the property caused by—
>
> (1) the receiving rail carrier;
>
> (2) the delivering rail carrier; or
>
> (3) another rail carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading.
>
> Failure to issue a receipt or bill of lading does not affect the liability of a rail carrier.
>
> A delivering rail carrier is deemed to be the rail carrier performing the line-haul transportation nearest the destination but does not include a rail carrier providing only a switching service at the destination.

49 U.S.C. § 11706(a).

Similarly, as to motor carriers and freight forwarders, the Carmack Amendment states in relevant part:

> A carrier providing transportation or service subject to jurisdiction under subchapter I [motor carriers] or III [freight forwarders] of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 [rail carriers] are liable to the person entitled to recover under the receipt or bill of lading.
>
> The liability imposed under this paragraph is for the actual loss or injury to the property caused by
>
> (A) the receiving carrier,
>
> (B) the delivering carrier, or

> (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702.
>
> Failure to issue a receipt or bill of lading does not affect the liability of a carrier.
>
> A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

49 U.S.C. § 14706(a)(1). These provisions are "virtually identical." *CNA Ins. Co. v. Hyundai Merch. Marine Co.*, 747 F.3d 339, 353 (6th Cir. 2014).

Thus, "Carmack applies only to transport of property for which Carmack *requires* a receiving carrier to issue a bill of lading, regardless of whether that carrier *erroneously fail[ed] to issue* such a bill." *Smallwood*, 660 F.3d at 1120 n.5 (emphases added) (quoting *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 102–03 (2010) ("*Regal-Beloit*")).

Further, a bill of lading is required if two conditions are met. First, the carrier must "provid[e] transportation or service" subject to certain jurisdiction. 49 U.S.C. §§ 11706(a), 14706(a)(1). Second, the carrier must "receive[]" the property for "transportation under this part," where "this part" is the applicable jurisdiction. *Id.* Carmack only requires a receiving carrier—and not a delivering or connecting carrier—to issue a bill of lading. *Regal-Beloit*, 561 U.S. at 101. As applies here, the STB has jurisdiction over interstate transportation within the United States. 49 U.S.C. §§ 10501(2)(A) (rail carriers), 13501(1)(A) (motor carriers), 13531(a)(1) (freight forwarders).

//

//

//

### 3. Application

#### (1) BNSF

Plaintiff alleges that Defendant BNSF attempted to transport the Subject Goods from Washington to Ohio, by rail and while loaded in a TOFC configuration. Dkt. No. 6 ¶¶ 3.7–3.12. This transportation occurred after Defendants Max Trans and/or Delta "erroneously believed" the Subject Goods were assigned to rail and loaded them accordingly at Defendant BNSF's rail yard—even though the shipper (Polaris) had requested transport overland by truck. *Id.*

Plaintiff "agrees . . . in principle" that its common law claims should be dismissed because they are preempted, "but unless and until this Court holds that the Carmack Amendment is the law applicable to this case," Plaintiff pleads its state law claims in the alternative. Dkt. No. 27 at 6. Plaintiff appears to suggest elsewhere in its brief that the Carmack Amendment may not apply because the carriage of the Subject Goods was undertaken "by mistake" and that Plaintiff's subrogor, Polaris, had not "purposefully availed itself of [Defendant] BNSF's services as a carrier." *Id.* at 10.

The Court finds that the Carmack Amendment applies to this case and preempts Plaintiff's common law claims. Plaintiff alleges that Defendant Expeditors issued two sea waybills for overseas transportation from various locations to Seattle and Tacoma, Washington.[3] Dkt. No. 6 ¶ 3.3. Defendant Expeditors, a freight forwarder, then issued two "bookings"[4] for overland transportation from Washington to Ohio, and it hired Defendant Max Trans, a motor truck carrier, to pick up the Subject Goods in Seattle and transport them to Ohio. *Id.* ¶¶ 3.6–3.7.

---

[3] Plaintiff attaches to its response the sea waybills issued by Defendant Expeditors. *See* Dkt. No. 28-1. While the Court may not consider this material in a motion to dismiss, the waybills are bills of lading and do state that the overseas leg of the shipment was to end in Washington. *Id.*

[4] Plaintiff did not attach a copy of these "bookings" to the Complaint. Thus, it is unclear whether these "bookings" are bills of lading or what their terms might be. Plaintiff can certainly plead these allegations with more clarity if it files an amended complaint.

Defendant Max Trans picked up the Subject Goods and moved them to a container yard. *Id.* ¶ 3.7. Defendant Max Trans further subcontracted some or all of the interstate carriage to Defendant Delta. *Id.* The overland transportation was ultimately performed by Defendant BNSF, which carried the Subject Goods eastbound by rail.[5] *Id.* ¶ 3.8, 3.10. Under these circumstances, one of the receiving entities at the point of origin—be it freight forwarder Defendant Expeditors or motor carrier Defendant Max Trans—was required to issue a separate Carmack-compliant bill of lading. 49 U.S.C. § 14706(a)(1).[6]

Plaintiff notes that there is no evidence or allegation that Defendant BNSF issued a bill of lading. Dkt. No. 27 at 6. While there is no evidence or allegation at this stage that *any* carrier issued a bill of lading, it does not matter: "The decisive question is not whether the [ ] carrier in fact issued a Carmack bill but rather whether the carrier was required to issue a bill by Carmack's first sentence." *Regal-Beloit*, 561 U.S. at 103. As one of the Defendants was required to issue such a bill (even if a bill was never actually issued), the Carmack Amendment applies and "completely preempts" Plaintiff's claims of negligence and breach of contract, which stem entirely from alleged damage to the Subject Goods. *White*, 543 F.3d at 584; *see also, e.g.*, *BNSF Logistics, LLC v. L&N Express, Inc.*, No. C11-5810, 2012 WL 525526, at *4–5 (N.D. Cal. Feb. 16, 2012) (holding breach of contract and negligence claims preempted by Carmack Amendment).

---

[5] Defendant BNSF suggests that the transportation may be "exempt" pursuant to 49 U.S.C. § 10502. *See* Dkt. No. 24 at 11 n.1; *see also* 49 C.F.R. § 1092 (rail and highway TOFC service exempt). This exemption permits carriers to offer shippers alternative terms to Carmack liability. *See Nippon Yusen Kaisha v. Burlington & N. Santa Fe Ry. Co.*, 367 F. Supp. 2d 1292, 1300 (C.D. Cal. 2005). Here, there is no allegation that *any* carrier offered alternative terms. Even if they did, however, "the shipper[ ] sues the carrier under the Carmack Amendment, rather than under a state-law breach of contract or negligence claim; the carrier may plead as an affirmative defense that a limitation of liability applies." *Schoenmann Produce Co. v. Burlington & N. Santa Fe Ry. Co.*, 420 F. Supp. 2d 757, 762 (S.D. Tex. 2006) (citing *Tokio Marine & Fire Ins. Co., Ltd. v. Amato Motors, Inc.*, 996 F.2d 874, 878 (7th Cir. 1993); then citing, *inter alia*, *Nippon Yusen Kaisha*, 367 F. Supp. 2d 1292).

[6] Plaintiff does not allege whether Defendant BNSF or Defendant Max Trans is a "receiving carrier," a "delivering carrier," or a "connecting carrier" under Carmack, nor do the Parties address these categories in their briefing. *See Regal-Beloit*, 561 U.S. at 100. Regardless, the Court finds that Carmack applies to the shipment in this case.

ORDER ON MOTIONS TO DISMISS - 10

    Plaintiff's other arguments are also unavailing. In its request for leave to amend, Plaintiff appears to suggest (without authority) that because transportation by Defendant BNSF was "likely . . . by mistake," the Carmack Amendment does not apply. Dkt. No. 27 at 10. However, there is no requirement in the text of Carmack that a carrier be specifically and intentionally selected for Carmack to apply. Indeed, the purpose of the Carmack Amendment is "to relieve cargo owners 'of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.'" *Regal-Beloit*, 561 U.S. at 98 (quoting *Reider v. Thompson*, 339 U.S. 113, 119 (1950)). Plaintiff itself pleads in the alternative that Defendant BNSF "entered an implied and express contract with Polaris" to carry the Subject Goods, suggesting that regardless of the parties' intentions, Defendant BNSF entered some kind of contract for transportation of the Subject Goods. Dkt. No. 6 ¶ 7.4. Finally, the Ninth Circuit's decision in *Smallwood* strongly suggests that a mistake in effectuating the shipper's instructions (here, carriage by rail instead of by motor) does not negate the application of Carmack. 660 F.3d at 1120 n.5 (finding Carmack "plainly governs" the shipment, even though carrier shipped goods abroad instead of storing them as instructed).

    Relatedly, also in its request for leave to amend, Plaintiff appears to suggest (without authority) that because neither Polaris nor any of its agents "appears to have purposefully availed itself" of Defendant BNSF's carrier services, the Carmack Amendment may not apply. Dkt. No. 27 at 10. But under Carmack, "[f]or the purposes of Fixing the liability, the several carriers must be treated, not as independent contracting parties, but as one system." *Mo., Kan. & Tex. Ry. Co. of Tex. v. Ward*, 244 U.S. 383, 387–88 (1917); *see also CNA Ins. Co.*, 747 F.3d at 356 (observing that in *Ward*, the Supreme Court "allowed the shipper to sue and recover from subsequent rail carriers, despite the absence of contractual privity between the shipper and those carriers"). Thus, it is irrelevant that Polaris did not contract with Defendant BNSF specifically.

Order on Motions to Dismiss - 11

What matters is that Defendant BNSF was part of the chain of carriers engaged to transport the Subject Goods.

Therefore, as to Plaintiff's common law claims, Defendant BNSF's motion to dismiss is GRANTED and the claims are DISMISSED without leave to amend, as amendment would be futile.

(2)   Max Trans

Plaintiff "agrees that [Defendant] BNSF and [Defendant] Max Trans are, at this early juncture, in substantially similar positions in relation to this destroyed cargo." Dkt. No. 33 at 2. Plaintiff also again "agrees, in principle," that the Carmack Amendment preempts state law claims, but notes that the Court must first rule that Carmack applies. *Id.* at 3.

As to Defendant Max Trans, Plaintiff presents no questions of mistake or purposeful availment; on the contrary, Plaintiff alleges that Defendant Expeditors explicitly hired Defendant Max Trans as a motor truck carrier to carry the Subject Goods to Ohio. Dkt. No. 6 ¶ 3.7. Plaintiff makes no distinct argument against application of the Carmack Amendment to claims against Defendant Max Trans. Moreover, the Court has found that the Carmack Amendment applies to this case. *See supra* Section III.A.3.1.

Therefore, as to Plaintiff's common law claims, Defendant Max Trans's motion to dismiss is GRANTED and the claims are DISMISSED without leave to amend, as amendment would be futile.[7]

**B.   Failure to State a Claim**

"A shipper . . . establishes a prima facie case of a carrier's liability under the Carmack Amendment by establishing by a preponderance of the evidence that the goods were: (1) delivered to the carrier in good condition; (2) the goods were damaged or lost while in the

---

[7] Because the Court finds that the Carmack Amendment preempts all common law claims, the Court need not reach Defendants' arguments related to COGSA.

carrier's possession; and (3) damages." *ASARCO LLC v. England Logistics, Inc.*, 71 F. Supp. 3d 990, 994 (D. Ariz. 2014) (citing *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964)); *accord CNA Ins. Co.*, 747 F.3d at 353.

Defendants BNSF and Max Trans both argue that Plaintiff's claim under the Carmack Amendment is not plausibly alleged because Plaintiff has not alleged the condition of the goods when provided to them. Dkt. No. 24 at 18; Dkt. No. 25 at 8. In addition, Defendant BNSF argues in one sentence that Plaintiff does not allege that it satisfied "claim submission requirements" prior to suit (Dkt. No. 24 at 18), and Defendant Max Trans argues that Plaintiff "fail[s] to definitively allege that Max Trans actually took possession or, in the alternative, subcontracted to Delta to take possession" prior to loading (Dkt. No. 25 at 8). Plaintiff responds that "it is legally inferred in federal cargo litigation that the cargo was in good order when it is destroyed in transit." Dkt. No. 27 at 9; *accord* Dkt. No. 33 at 4. Plaintiff also points out that Defendant BNSF does not specify the alleged claim requirements. Dkt. No. 27 at 10.

The Court agrees that Plaintiff has failed to sufficiently allege the condition of the Subject Goods. Indeed, Plaintiff makes no allegation as to the condition of the Subject Goods at any stage of transport, save their ultimate destruction in the derailment. Dkt. No. 6 ¶ 3.11. However, as Plaintiff notes, this deficiency is "clearly curable by amended allegations." Dkt. No. 27 at 11. Therefore, as to Plaintiff's Carmack claims, Defendants' motions are GRANTED, and the claims are DISMISSED with leave to amend.

Defendants' other arguments are unavailing. First, Defendant BNSF's argument about "claim submission requirements" appears to refer to certain regulations setting out "the minimum requirements of a written notice under the UBL [Uniform Bill of Lading]." *N.Y. Marine & Gen. Ins. Co. v. Estes Express Lines, Inc.*, No. C15-2962, 2016 WL 11778406, at *4 (S.D. Cal. Oct. 25, 2016), *aff'd*, 719 F. App'x 691 (9th Cir. 2018); *see* 49 U.S.C. § 14706(e)(1); 49 U.S.C.

§ 11706(e); 49 C.F.R. § 370.3(b); 49 C.F.R. § 1005.2(b); *see also S&H Hardware & Supply Co. v. Yellow Transp., Inc.*, 432 F.3d 550, 554 (3d Cir. 2005) ("Under the implementing regulations of the Carmack Amendment, a claim must file notice of loss or damage with the carrier *within the time specified on the bill of lading . . . .*" (emphasis added)). The Ninth Circuit has held that these notice requirements apply to both contested and uncontested claims, but it did so in a case where a bill of lading was issued and included a written notice requirement. *See Ins. Co. of N. Am. v. G.I. Trucking Co.*, 1 F.3d 903, 906 (9th Cir. 1993); *see also id.* at 905 (stating that the regulations "outline the minimum requirements of a written notice claim under the UBL").

   Notably, Defendant BNSF supplies no authority that these regulations create a free-standing notice requirement in a case like this one, where Plaintiff does not allege that a bill of lading was issued. Thus, "[e]ven if notice ultimately is required in a contested case such as this, [Defendant BNSF] has provided no authority that a plaintiff must affirmatively plead compliance with the notice of claim procedure when pleading a claim pursuant to the Carmack Amendment, particularly where, as here, [Plaintiff has] not alleged that [it was] provided a bill of lading or contract setting forth the notice requirements." *Swenson v. All. Moving & Storage LLC*, No. C21-1968, 2022 WL 1508506, at *12 (D. Colo. Apr. 26, 2022), *report and recommendation adopted*, 2022 WL 1500778 (D. Colo. May 12, 2022).

   Defendant BNSF believes "[i]t is at least suggested" by the Amended Complaint "that [Defendant] Expeditors did issue a bill of lading or other receipt for the freight in this case." Dkt. No. 30 at 6. But a bill of lading is not alleged, nor is one presented to the Court. If Defendant BNSF has a good-faith basis for believing or discovery reveals that a bill of lading was issued and included notice requirements, or if it knows it issued such a bill, Defendant BNSF may be able to assert lack of compliance as a defense. *See, e.g.*, *Estes Express Lines*, 2016 WL 11778406, at *7 (granting summary judgment where bill of lading required written notice of

claim, but notice did not meet regulatory requirements). But at this stage, based on the facts alleged, Plaintiff does not need to plead compliance with such requirements.

Second, Defendant Max Trans's argument that the allegations do not sufficiently allege its possession of the Subject Goods is meritless. Plaintiff plainly alleges that after Defendant Max Trans was hired by Defendant Expeditors, "Max Trans picked up the two trailers [containing the Subject Goods] at Seattle and took them to a container yard." Dkt. No. 6 ¶ 3.7. From there, "Max Trans further subcontracted some or all of the interstate motor truck carriage to Delta." *Id.* These allegations are sufficient to establish possession by Defendant Max Trans.

## IV.   CONCLUSION

Accordingly, it is hereby ORDERED:

(1)   Defendant BNSF's motion to dismiss (Dkt. No. 24) is GRANTED.

(2)   Defendant Max Trans's motion to dismiss (Dkt. No. 25) is GRANTED.

(3)   Plaintiff is GRANTED leave to amend its claims under the Carmack Amendment. Should Plaintiff choose to amend, the amended complaint SHALL be filed **within thirty (30) days** of this Order.

Dated this 31st day of January 2024.

Tana Lin
United States District Judge